## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

ROBERT DILLON,

    *Plaintiff*,

v.

CITY OF JACKSONVILLE
BEACH, *et al.*,

    *Defendants*.

_____/

Case No. 2:26-cv-1936-JES-KRH

## PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF JACKSONVILLE BEACH'S MOTION TO TRANSFER

Plaintiff Robert Dillon respectfully submits this response in opposition to the Motion to Transfer filed by Defendant City of Jacksonville Beach (the "City") (Doc. 31).

## INTRODUCTION

Jacksonville Beach reached across Florida to wrongfully arrest a man who had never set foot in Jacksonville Beach. Having wrongfully pulled Mr. Dillon into a criminal process 300 miles from his home, the City, completely ignoring the fact that Mr. Dillon has never set foot in Jacksonville Beach, now asks to reach across Florida a second time, to haul Plaintiff to Duval County to litigate the injury it inflicted on him in Fort Myers, all for its own convenience.

Mr. Dillon was seized at his home in Fort Myers, held overnight in jail in Fort Myers, and left to absorb the personal and financial wreckage of that wrongful arrest in Fort Myers. Accordingly, he filed suit here: his home forum, and the place where

1

he suffered his constitutional injury.

The City argues for venue transfer because more of the defendants, and more of the pre-arrest investigation, are connected to the Jacksonville Division. That is not the standard.

Because the City seeks a transfer between divisions of the same district, it must establish that the Jacksonville Division "clearly would be more convenient for the parties and/or witnesses, or would best serve the interest of justice." *Combs v. Fla. Dep't of Corrs.*, 461 F. Supp. 3d 1203, 1207 (N.D. Fla. 2020). A transfer that would merely shift inconvenience from the defendants to the plaintiff must be denied. *Id.* This Court applied those principles recently in *Trocano v. Vivaldi* and denied a materially identical motion: a Fort Myers Division plaintiff, defendants located elsewhere in Florida, and a request to move the case to a division more convenient to the defense. 720 F. Supp. 3d 1231, 1237–39 (M.D. Fla. 2024). The City fares no better here. Indeed, as shown below, the City's own three authorities announce the very rule that defeats its motion. The motion should be denied.

## BACKGROUND

Mr. Dillon resides in Fort Myers, within the Fort Myers Division, and at all times relevant to the Complaint, earned his living there as a self-employed commercial crabber. Doc. 1 (Compl.) ¶¶ 1–2, 10. On the evening of August 26, 2024, a Lee County sheriff's deputy arrested Mr. Dillon at his Fort Myers home, in front of his wife, on a charge of luring or enticing a child. *Id.* ¶¶ 161–68. He was transported to a Lee County facility, held overnight, and processed at a detainee center in downtown Fort Myers

before posting bond the next day. *Id.* ¶¶ 169–73. Mr. Dillon had never been to Jacksonville Beach. *Id.* ¶¶ 1, 166. The economic and personal harm he suffered, including lost income during peak crab season, reputational injury, and emotional distress, he sustained at home, in the Fort Myers Division. *Id.* ¶¶ 183–91.

The claims center on the failure to investigate and on inadequate law enforcement policies and practices. Mr. Dillon alleges that he was identified through an unreliable facial recognition search, that the investigating officer treated that output as a near-certain identification, omitted exculpatory evidence from the warrant application, and failed to take routine steps that would have excluded him, and that institutional failures of policy, training, and supervision made that outcome foreseeable. *Id.* ¶¶ 116–60.

## LEGAL STANDARD

28 U.S.C. § 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice," to any district or division where the action might have been brought. 28 U.S.C. § 1404(a). Because the City seeks an intra-district transfer, the § 1404(a) factors govern. The City bears the burden of establishing that the Jacksonville Division "clearly would be more convenient for the parties and/or witnesses, or would best serve the interest of justice." *Combs*, 461 F. Supp. 3d at 1207; *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

That burden is demanding, because "[t]he federal courts traditionally have accorded a plaintiff's choice of forum considerable deference." *Ricoh*, 870 F.2d at 573 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). A plaintiff's "choice of forum

3

should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996); *P2B Trading Co. Inc. v. Google, LLC*, 2026 WL 1091014, at \*2 (M.D. Fla. Apr. 22, 2026).

Critically, § 1404 "is not designed to transfer the inconvenience from one party to another." *Trocano*, 720 F. Supp. 3d at 1238. "Merely demonstrating that litigating the case in another division or district would be equally convenient will not suffice;" the movant must show that "some other forum is a better location to hear the dispute." *Combs*, 461 F. Supp. 3d at 1207 (citation omitted). A transfer that "merely shift[s] inconvenience from one party to another is not a sufficient basis for transfer." *Id.*; *accord Trocano*, 720 F. Supp. 3d at 1238. In weighing a transfer motion, courts consider (1) the convenience of the witnesses; (2) access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of compulsory process; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight due the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

### ARGUMENT

I. **Mr. Dillon's choice of his home forum, where he was seized and injured, is entitled to substantial deference the City cannot overcome.**

A plaintiff's choice of forum commands the greatest deference when the plaintiff sues in his home division and the operative facts bear a significant connection to that forum. *Combs*, 461 F. Supp. 3d at 1213–14. Both are true here. Mr. Dillon lives in the Fort Myers Division, and the wrongful arrest and resulting Fourth Amendment

injuries occurred there.

The two circumstances that can reduce that deference are both absent. A plaintiff's choice receives less weight when he "is not a resident of the forum . . . division," and when "the conduct at issue did not occur in [the] chosen forum." *Id.* at 1214. Mr. Dillon lives in the Fort Myers Division, and the conduct at the heart of his claim—his seizure—occurred here. His choice therefore retains full weight, and the City must show that convenience "clearly" outweighs it. *Robinson*, 74 F.3d at 260. This Court reached the same conclusion in *Trocano*, where the plaintiff lived in this division and her choice "weigh[ed] heavily against transfer and [wa]s not clearly outweighed by other considerations." 720 F. Supp. 3d at 1239.

## II.    The operative facts are not confined to the Jacksonville Division.

The City frames Duval County as the singular "locus of the allegations and operative facts." Doc. 31 ("Motion") at 3. That framing mistakes the nature of the claim. Mr. Dillon does not complain principally of something the City affirmatively *did* in Jacksonville. The City is right that some events occurred in the Jacksonville Division: the investigation (cursory as it was) and the warrant application happened there. But locating those events in Duval does not make it the *singular* locus of operative facts.

What Mr. Dillon challenges is not the affirmative steps the Jacksonville Beach Police Department took in Jacksonville but the ones it omitted: it recklessly or intentionally failed to investigate; it failed to test an unreliable facial recognition result before treating it as a near-certain identification; it failed to include exculpatory

5

information in the warrant application; and it failed to adopt the policies, training, and supervision that would have kept an unreliable computer match from becoming an arrest. These omissions gave rise to the consequences—here, Mr. Dillon's wrongful seizure and detention and his ensuing damages, all of which occurred exclusively in Fort Myers.

Locus analysis in § 1983 cases confirms the point. Where a challenged practice is applied to a plaintiff, "the alleged deprivation of [his] . . . rights t[akes] place because of the individualized application of th[e] [practice] to [him]," so the constitutional tort "occur[s]" where the practice was applied, not where it was formulated. *Combs*, 461 F. Supp. 3d at 1212. The application of the City's failures to Mr. Dillon was his unlawful seizure and detention in Fort Myers.

At most, then, the operative facts are split between the two Divisions, and "[w]hen there are multiple loci of operative facts and no single locus is primary . . . courts treat this factor [as] neutral." *Combs*, 461 F. Supp. 3d at 1211–12; *accord Wall v. Florida*, 2022 WL 4134579, at *4 (M.D. Fla. Sept. 12, 2022). A neutral factor does not carry the City's burden to show that transfer is clearly warranted. And as this Court recognized in *Trocano*, where the operative conduct consists of records and activity that "can be accessed from anywhere," the locus factor "does not favor transfer." 720 F. Supp. 3d at 1238. The investigative file, the facial recognition search records, and the warrant materials are electronic and equally available in either Division.

### III.    The City's own authorities compel denial, because each granted transfer only where the operative facts were absent from the plaintiff's chosen division.

The three cases the City cites each granted transfer, but each did so for the same reason the City cannot supply here: the operative facts were absent from the plaintiff's chosen division.

*Bennett*, a copyright action, was transferred from Orlando because "none of the events that directly give rise to the copyright infringement claim is alleged to have occurred in the Orlando Division." *Bennett Eng'g Grp. v. Ashe Indus.*, 2011 WL 836988 at *2 (M.D. Fla. Mar. 8, 2011) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003) ("only the events that directly give rise to a claim are relevant")). Here, the events directly giving rise to Mr. Dillon's claim—his seizure and wrongful arrest—occurred in Fort Myers.  Whereas Orlando hosted none of the operative events in *Bennett*, Fort Myers has the central one here.

*Fire Stop* and *Lloyd* are much the same.  *Fire Stop* transferred a case from this Division, but only because "none of the events that directly give rise to the bond or its collection occurred in the Fort Myers Division," where the plaintiff's sole tie was a principal place of business address in Naples. *Fire Stop Sys. v. Liberty Mut.*, 2015 WL 6750788 at *3 (M.D. Fla. Nov. 5, 2015).  Mr. Dillon's tie is not a mere corporate address but his actual home where his wrongful arrest occurred.  Similarly, *Lloyd* transferred the case from Orlando because the plaintiff neither resided there nor alleged that "any relevant acts or omissions occurred in any county within the Orlando Division." *Lloyd v. Am. Freedom Distillery*, No. 6:25-cv-381, ECF No. 90 at 4 (M.D.

7

Fla. Sep. 24, 2025), *report and recommendation adopted*, ECF No. 91 (M.D. Fla. Oct. 21, 2025). Every premise is reversed here. And *Lloyd* supplies the rule that governs the outcome in this case: a transfer must "serve the interests of justice — not simply shift the inconvenience from one party to another." *Id*. (quoting *Combs*, 461 F. Supp. 3d at 1207).

## IV.   The convenience factors do not clearly favor transfer.

### a) *Convenience of the parties.*

Keeping the case in Fort Myers is convenient for Mr. Dillon, who lives here. Transferring to Jacksonville would be convenient for the defendants who are there. That is the classic posture in which transfer must be denied. The City seeks not a more convenient forum, but one that shifts inconvenience from the City to Mr. Dillon. *Combs*, 461 F. Supp. 3d at 1211 ("Section 1404(a) was not designed to reallocate burdens among the parties."). Unlike an individual hauled 300 miles from home, a municipality litigating in another division of the same district bears only the ordinary burden of defending where its own unlawful conduct came to rest. In this case, that's Fort Myers.

### b) *Convenience of the witnesses.*

The convenience of non-party witnesses is often an important factor, but the movant must do more than gesture at categories of people. "[A] general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, does not warrant transfer under § 1404(a)." *Laica-Bhoge v. Eli Lilly & Co.*, 2015 WL 3919515, at *5 (M.D. Fla. June 25,

2015); *accord Combs*, 461 F. Supp. 3d at 1209; *Harvard v. Inch*, 408 F. Supp. 3d 1255, 1263 (N.D. Fla. 2019). The City does exactly what these cases forbid: it lists "the victim and her parents," "the investigation," "witnesses," "the assistant state attorney," and "the judge that signed the warrant," Motion at 3–4, without explaining what any witness would say or why such testimony is material. That generalized recitation cannot carry the City's burden.

The City's list is not merely conclusory; it is beside the point. The victim and her parents[1] can describe the crime, but the crime is not contested here. It is now undisputed that Mr. Dillon did not attempt to lure a child at the Jacksonville Beach McDonald's. The wrong done to him was being identified, arrested, and charged as though he had. What is contested is the reliability of the facial recognition result and the adequacy of the investigation that treated it as proof—questions that turn on the City's own officers and records, not on the victim's account. The City thus names no material non-party witness whose convenience favors Jacksonville.[2]

Moreover, because the City is a party, the convenience of its law enforcement witnesses is entitled to little weight, because the City can secure their attendance. *Combs*, 461 F. Supp. 3d at 1208–09; *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010). Material non-party

---

[1] The City's own records describe the victim and her parents as staying at a Jacksonville Beach hotel on the night of the incident. Compl. ¶ 6. The City has not shown these potential witnesses have any connection to the Jacksonville Division apart from staying at a hotel there more than two years ago.

[2] Remarkably, the City names "the judge that signed the warrant," who enjoys immunity from inquiry into her decision-making. *United States v. Morgan*, 313 U.S. 409, 422 (1941); *Robinson v. Comm'r*, 70 F.3d 34, 38 (5th Cir. 1995); *McCorkle v. United States*, No. 6:06-cv-950, 2007 WL 177683, at *1 (M.D. Fla. Jan. 19, 2007).

witnesses, meanwhile, are located in Fort Myers: the Lee County personnel who arrested, transported, and booked Mr. Dillon, and the witnesses to his damages, including those with knowledge of his crabbing business and the harm he suffered at home. In all events, "[t]he Fort Myers Division routinely entertains parties, witnesses, and attorneys from Miami, Orlando, and elsewhere without undue hardship to the participants or the case." *Trocano*, 720 F. Supp. 3d at 1238.

### c) *Access to sources of proof.*

The documentary record, the investigative file, the facial recognition search records, body-worn-camera footage, and the warrant materials, are equally accessible from either Division. "[M]odern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof," rendering this factor neutral. *Deltona Transformer Corp. v. Noco Co.*, 2019 WL 5390476, at *14 (M.D. Fla. Sept. 16, 2019); *accord Combs*, 461 F. Supp. 3d at 1210–11. Even the City's own authority agrees, giving the location of records "little weight due to modern technology." *Fire Stop*, 2015 WL 6750788 at *3.

### d) *The availability of compulsory process and cost.*

The City has not identified a single unwilling non-party witness, which alone defeats any reliance on compulsory process militating in favor of transfer. A movant cannot carry this factor by supposing that unnamed witnesses might refuse to appear, but must, at the very least, identify specific material witnesses with a demonstrated unwillingness to testify who sit beyond the court's reach in the plaintiff's chosen forum. *See Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d

10

1274 (S.D. Fla. 2012) ("[I]t is one thing to identify where the Court's subpoena power ends, and it is quite another to establish the impact that this lack of jurisdiction will have on a particular action."); *Harvard v. Inch*, 408 F. Supp. 3d 1255 (N.D. Fla. 2019); *Trinity Christian*, 761 F. Supp. 2d at 1329. The City has not done so.

In any event, the compulsory process concern cuts both ways. Because both Divisions sit within the same district, any trial-subpoena limit under Federal Rule of Civil Procedure 45(c) applies with equal force to each side: to whatever extent a Jacksonville-area witness would be more readily compelled to testify in Jacksonville, the Lee County personnel who arrested, transported, and booked Mr. Dillon, and all witnesses to Mr. Dillon's emotional and economic damages would be more readily compelled in Fort Myers. The factor is therefore at least neutral, or weighs in favor of Fort Myers.

Cost, by contrast, clearly militates against transfer. Requiring Mr. Dillon—an individual of modest means represented pro bono—to prosecute his case 300 miles from his home, family, and work imposes a far heavier burden than requiring the institutional defendants to defend in Fort Myers. *See Trocano*, 720 F. Supp. 3d at 1238 (relative means "clearly weighs in favor of plaintiff's choice of forum"); *Kampwerth v. Sw. Airlines Co.*, 2011 WL 5597322, at *6 (M.D. Fla. Nov. 17, 2011).

### e) *Interest of justice.*

The interest of justice strongly favors Fort Myers. Both Divisions apply the same federal law, sit within the same district, and are equally familiar with the governing law. *See Wall*, 2022 WL 4134579, at *4; *Harvard*, 408 F. Supp. 3d at 1265. Further,

11

the Fort Myers Division has its own strong local interest in adjudicating the wrongful arrest of one of its residents. *Cf. Mollica v. Parker*, 2011 WL 13295394, at *5 (M.D. Fla. Feb. 22, 2011) (recognizing the community's interest in "having localized controversies decided at home"). Moreover, it would be manifestly unjust (and a twisted irony) for the City, having ignored Mr. Dillon's protestations that he had never set foot in Jacksonville Beach, to invoke its own convenience as a basis for transferring this case to a courthouse 300 miles from Mr. Dillon's home. As in *Trocano*, the interest-of-justice factor favors keeping the case in Fort Myers. 720 F. Supp. 3d at 1239.

**V.     Neither the number of defendants connected to Jacksonville nor Local Rule 1.04(b) warrants transfer.**

The thrust of the City's motion is a head-count: because three of the four remaining defendants and components of the pre-arrest investigation are connected to the Jacksonville Division, the case should move there. But § 1404 turns on convenience and the interest of justice, not on which forum is home to the most defendants. Local Rule 1.04(b) does not change the analysis.

The Local Rule governs where an action should be brought and advanced—the division "to which the action is most directly connected or in which the action is most conveniently advanced"—and directs transfer only "to the division most consistent with the purpose of th[e] rule." M.D. Fla. R. 1.04(b). It is primarily a venue-assignment rule, and although it carries an element of convenience, that inquiry runs in parallel with the § 1404(a) balancing test and is not a separate analysis. *See, e.g., Conran v. Raymond James Fin., Inc.*, 2024 WL 4581276, at *1 (M.D. Fla. Oct. 25, 2024);

*Heartbeat of Mia. v. Jane's Revenge*, 2023 WL 11056512, at *1 (M.D. Fla. Sept. 20, 2023).

As explained above, Mr. Dillon filed in the Division to which the action is most directly connected, where he was unlawfully seized and injured. If anything, Rule 1.04(b) reinforces Fort Myers as the proper Division to adjudicate this case. That is where the deprivation of his Fourth Amendment rights occurred, when he was arrested and detained for a crime he had nothing to do with.

## CONCLUSION

For all these reasons, Jacksonville Beach's venue transfer motion should be denied.

Respectfully submitted July 10, 2026,

/s/ Steven M. Silverberg

Ira J. Lipton*
Siddartha Rao*
Steven M. Silverberg*
**Hoguet Newman**
**Regal & Kenney, LLP**
60 East 42nd Street, 48th Floor
New York, NY 10165
(212) 689-8808
ilipton@hnrklaw.com
srao@hnrklaw.com
ssilverberg@hnrklaw.com

*Special admission*

Nicholas L.V. Warren (FBN 1019018)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
dtilley@aclufl.org

Nathan Freed Wessler*
Lauren J. Yu*
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org
lyu@aclu.org

*Counsel for Plaintiff*